Brinkerhoff, C. J.
This is a bill in chancery for foreclosure, and sale of mortgaged premises, filed in the common pleas of Gallia county, and from thence appealed to the district court of that county, and by it reserved for decision here.
The facts in the case, so far as it is necessary to state them in order to an understanding of the questions they present, are these:
During and subsequent to the year 1837, John Mcssman *43 was seized in fee of the land described in the bill, being two hundred and sixty-two acres, more or less, in Gallia county In January, 1839, said John Mossman gave to Fisher, complainant’s intestate, a mortgage on this land to secure the payment of two promissory notes before that time given by him to Fisher, and amounting, together, to about $420, and which was, in the same month, duly recorded. During the year preceding the giving of this mortgage, to-wit, in Octotober and November, of 1838, John Gating obtained judgment in Gallia common pleas against said John Mossman for $129 and some cents, and Wheeler and Raymond obtained judgment against him in the same court for about $261.
Subsequent to the giving and recording of the mortgage, to-wit, in August, 1840, William Clendenen recovered, in the same court, a judgment against Mossman, the mortgagor, for about $882 ; and in March, 1841, the administrator of Arthur Baidlie recovered a judgment against him in the same court for about $268.
In July, 1841, John Mossman, the mortgagor, died, and his widow and one John N. Kerr wsre, on the 8th of November, 1841, duly appointed and qualified as administratrix and administrator of his estate, and gave bond as such, of which due notice was given on the eighteenth of the same month.
On the 22d of November, 1841, Fisher presented to Kerr, administrator of Mossman, the following memorandum :
Note $326 17. Date 12th Nov., 1838, payable at one year.
Do. 93 50. Date 7th Jan., 1839, payable ten months.
Do. 157 05. Date 22d Nov., 1839, one day.
Judgment 60 70, favor Fisher & Morrison, date July 9,1841, one day
$637 42
At the bottom of which memorandum Kerr wrote and signed the following:
“Received of H. Fisher, as administrator on the estate of John Mossman, notice of the existence of the above claims.
John N. Kerr, Adm’r.
Gallipolis, 22nd Nov., 1841.”
*44 Two of the notes mentioned in the above memorandum were the same notes which the mortgage had been given to secure.
No assets ever came to the hands of the administrators, except such as were set off to the widow for her year’s support; no lands were ever sold by them; and no final settlement of the estate has been made.
Executions were at length issued on the judgments in favor of Gating and Wheeler & Raymond, which, it will be remembered, were obtained prior to the execution of the mortgage, and, on the 9th of October, 1847, eighty-seven acres off the west end of the before mentioned tract of land were sold by the sheriff, under these executions, to Thomas and David Mossman, for some $456; and in May, 1848, they received the sheriff’s deed therefor, which was at once recorded.
In 1853, execution issued under the judgments of Clendenen and Laidlie’s administrator, and which, it will also be remembered, were obtained subsequent to the date and record o^ the mortgage to Fisher; and, on the 14th day of March of that year, the remainder of the tract of land was sold by the sheriff to Thomas Mossman, who, prior to the filing of this bill, received the sheriff’s deed therefor. Fisher, the mortgagee, was present at this sale by the sheriff, and said nothing about his mortgage lien.
The judgments of Cating and of Wheeler & Raymond having been obtained prior to the execution of the mortgage to Fisher, and so having, under the statute, a prior lien on the land, it seems to be conceded by counsel for complainant that the sale of the eighty-seven acres under those judgments must stand; and the complainant’s remedy, if he have one, must be confined to the remainder of the tract.
By way of defense against the remedy which the complainant seeks by foreclosure and sale of the remainder of the land, and which was sold under the judgments of Clendenen and Laidlie’s administrator, obtained subsequent to the mortgage, it is claimed, both in the answer and in argument, in behalf of Thomas Mossman, the purchaser of that remainder, *45 and who is a party defendant here, that an action on the notes, to secure which the mortgage was given, is barred by lapse of time, under the provisions of section 103 of the act of March 23, 1840, “ to provide for the settlement of the estates of deceased persons ” (1 Curwen’s Rev. Stat. 728); and that the remedy by action on the notes being barred, the remedy in equity on the mortgage is, as a legal consequence, also lost.
Said section 103 of the administration act provides, that “ no executor or administrator, after having given notice of his appointment, as provided in the 81st section of this act, shall be held to answer to the suit of any creditor of the deceased, unless it be commenced within four years from the time of his giving bond, excepting in the cases hereinafter mentioned.”
As it appears that no action was ever brought on the notes secured by the mortgage, and as they are not within the ex-septions subsequently named in the act, and more than four years elapsed between the time of giving bond by the administrator and administratrix and the filing of this bill, an action on the notes was barred, unless, within that time, they were “ allowed ” by the administrator as a valid claim against the estate. And that they were not thus allowed is, to us, very clear. They were neither “ allowed ” so as to take them out of the operation of section 103 of the administration act, nor “ rejected” so as to compel the creditor, in order to avoid the bar of section 90 of that act, to bring his action within six months after the rejection. They were neither allowed nor rejected; all that was done by the administrator in respect to them was to acknowledge “notice of their existence.” See Keenan v. Saxton’s adm’r., 13 Ohio Rep. 41.
But does it follow that because an action on the notes secured by the mortgage is barred by the statute, that therefore the remedy in equity on the mortgage is also lost? We think not. The clause of the statute under which an action on these notes is barred is a part of the administration act, and not. of the general act concerning the limitation of actions; but we can see no good reason why the question should be regarded as being at all different on that account. This ques *46 tion was well considered and ably discussed by Williams, C. J., in a case substantially analagous to this (Belknap v. Gleason, 11 Conn. R. 160), and it was there held, “ that statutes of limitation, being statutes of repose, suspend the remedy, but do not cancel the debt.” That “ though the statute of limitation is equally available as a defense at law and in equity; yet where there are two securities for the same debt, one of which is barred by the statute and the other not, the creditor, notwithstanding he has lost his remedy at law on the former, may pursue it in equity on the latter.” That “ where a security for a debt is a lien on property, personal or real, that lien is not impaired in consequence of the debt being barred by the statute of limitations. Therefore, where a debt due to A from B, was secured by a promissory note made by B, in April, 1817, payable in five years, and by a mortgage of real estate, executed by B at the same time; the note was never in fact paid, and B had no property except the estate mortgaged; on a bill of foreclosure brought by A, in January, 1835 ” (after an action on the note was barred by the statute), “ it was held that he was not barred of his right as mortgagee, and the relief sought was decreed.” And that, “ in such case, the finding of a debt due from B to A as the basis of a decree of foreclosure, would not preclude B from availing himself of the statute of limitations in a subsequent action on the note.”
A discussion of the question on principle, and a review of the authorities bearing upon it, would be a work of supererogation after it has been so thoroughly done already in Belknap v. Gleason, and we content ourselves with saying, that it seems to us that that case was correctly decided, and that it is decisive of the one before us, on the point under consideration. This doctrine of the supreme court of Connecticut was referred to with approbation by the supreme court of this State, in Gary v. May, 16 Ohio Rep. 66; and in fact, that case was decided on the same principle; the only material difference of fact in the two cases being, that in Gary v. May, the debt was secured by a deed of trust, instead of a mortgage, as in Belknap v. Gleason.
2. Again, it is urged in defense of this bill that inasmuch *47 as Eisher, the mortgagee, was present at the last sale by the sheriff, and was silent in respect to the lien of his mortgage, he is now estopped from asserting that lien. It is a familiar general principle in equity, that if a person having a right to an estate stand by and permit a purchaser, ignorant of bis right, to buy it of another without asserting his right, if he be himself aware of its existence, the purchaser shall hold it against the person who has the right. Smiley v. Wright, 2 Ohio Rep. 510.
But is this principle applicable to the case of a sheriff’s sale and a duly recorded mortgage, and in the absence of actual fraud ? No case is cited by counsel in which the principle has been applied to such a sale, and we believe that none can be found. And in a case of this kind it seems to us that the reason of the rule fails. The purchaser took something by the sale, to-wit, the equity of redemption, which often is, and in this case probably was, a valuable estate. He purchased at a judicial sale, as to which the maxim caveat emptor applies; the record of the mortgage was a standing and accessible notice to him and all the world, and it seems to us that the mortgagee had as good right to presume the bidders to be informed of the existence of his lien, as the purchaser had to presume that he would make proclamation of a recorded mortgage.
If the mortgagee had said or done anything to deceive or mislead the purchaser, or if, on being interrogated in respect to his rights or claims, he had then deceitfully kept silent, the case would be very different from what it now is. But there is no evidence, beyond the mere fact of silence, of any actual fraud or deceit on the part of the mortgagee; and in such a case, the mortgage being duly recorded, we think the principle does not apply.
The complainant will be permitted to enter a decree for foreclosure and sale, as to that part of the land not embraced in the sale under the judgments of a date prior to that of the mortgage.
Scott, Sutliff, Peck and Gholson, JJ., concurred.